

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-14-00358-CV

Juanita **SPRUTE**, M.D. and Jefferson Family Practice Associates,
Appellants/Cross-Appellees

v.

Arnold L. **LEVEY**,
Appellee/Cross-Appellant

From the 45th Judicial District Court, Bexar County, Texas
Trial Court No. 2014-CI-02406
Honorable Larry Noll, Judge Presiding

Opinion by: Sandee Bryan Marion, Chief Justice

Sitting: Sandee Bryan Marion, Chief Justice
Rebeca C. Martinez, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed: July 15, 2015

AFFIRMED

This appeal and cross-appeal arise from two orders. In the first order, the trial court dismissed the underlying cause for failure to file an expert report pursuant to section 74.351 of the Texas Civil Practice and Remedies Code ("Code"). The first order stated that the amount of attorney's fees and costs of court to be awarded would be reset for a future hearing. In the second order, which incorporated the first order, the trial court awarded attorney's fees and court costs in the amount of $5,030.00.

Juanita Sprute, M.D. and Jefferson Family Practice Associates (the "Association"), the appellants/cross-appellees, appeal the trial court's award of attorney's fees, asserting the trial court abused its discretion in failing to award them the total amount of attorney's fees established as reasonable and incurred by uncontroverted, sworn evidence. Arnold L. Levey, the appellee/cross-appellant, asserts the trial court erred by: (1) dismissing his claims against Sprute and the Association because they failed to produce the medical records necessary for the preparation of an expert report; (2) denying his request for a jury trial to determine the reasonableness of the amount of attorney's fees to award; and (3) awarding any attorney's fees. Alternatively, Levey asserts the trial court did not abuse its discretion with regard to the amount of attorney's fees awarded.

## PROCEDURAL BACKGROUND

Levey's mother passed away on February 15, 2011. On April 30, 2013, Levey, who is an attorney, filed the underlying lawsuit against Sprute, the Association, and other defendants alleging various causes of action relating to the medical care provided to Levey's mother, her transfer to a hospice program, and the medical treatment she received while in the hospice program.[1] In his petition, Levey alleged that prior to filing the lawsuit, he sent the defendants notice of the claims and a release to obtain medical records, thereby tolling the statute of limitations for a period of seventy-five days. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.051 (West 2011).

On May 31, 2013, Sprute and the Association filed special exceptions to Levey's original petition, asserting the allegations were vague, general, and indefinite. Sprute and the Association also filed a plea in abatement, asserting Levey failed to allege and prove the necessary requirements to establish that he had proper legal capacity to sue on behalf of his mother's estate.

---

[1] The claims against Sprute and the Association were subsequently severed from the claims against the other defendants, who are not parties to this appeal.

Sprute and the Association requested an abatement until Levey alleged and proved he had proper legal capacity. On June 25, 2013, a hearing was held, and the trial court granted both motions.

On July 9, 2013, Levey filed an amended petition alleging no personal representative of his mother's estate was appointed because no estate administration was pending and none was necessary. Accordingly, Levey alleged he had standing to bring the action on behalf of his mother's estate.

On October 4, 2013, Sprute and the Association filed a motion to dismiss because Levey had not timely served them with an expert report as required by section 74.351 of the Code. Because Levey's original petition was filed on April 30, 2013, Sprute and the Association asserted the 120-day deadline for serving the expert report expired on August 28, 2013. Although recognizing the multiple causes of action alleged by Levey, Sprute and the Association asserted that all of the claims constituted health care liability claims because they were based on and inseparably related to the medical treatment provided to Levey's mother. The motion requested the trial court to dismiss the claims against them with prejudice and to award them attorney's fees and costs of court.

On October 14, 2013, Levey filed a response to the motion to dismiss which included a motion to abate the proceedings retroactively until the medical records were produced and a motion to extend the deadline for providing the expert report. Levey asserted the deadline for serving the expert report should be extended because Sprute and the Association failed to produce medical records in response to the release form he provided on February 14, 2013. Levey also asserted that his claims included both health care liability claims and claims based strictly upon fraud which were not health care liability claims.

On November 1, 2013, Sprute and the Association filed a reply to Levey's response. In the reply, Sprute and the Association cite numerous cases to support their contention that all of

Levey's claims were health care liability claims. In addition, Sprute and the Association asserted Chapter 74 of the Code does not provide for the type of extension requested by Levey, and, even if it did, Levey did not exercise sufficient due diligence to be entitled to such an extension. Sprute and the Association contended that the medical record authorization form provided by Levey did not comply with the Health Insurance Portability and Accountability Act ("HIPPA"). Sprute and the Association further contended that Levey was informed of the form's deficiencies at the prior hearing on June 25, 2013, but no additional form was provided. Although the attorney for the other defendants in the lawsuit sent Levey a HIPPA-compliant form on August 22, 2013, Sprute and the Association alleged Levey failed to respond.

On November 5, 2013, the trial court held a hearing on the motion to dismiss. In addition to asserting the arguments made in the motion, the response, and the reply, the attorney for Sprute and the Association informed the trial court that the deficiency with Levey's medical record release form was discussed at the June 25, 2013 hearing on their special exceptions and plea in abatement, but no further action was taken by Levey. The attorney further stated that Levey also had never executed and provided the HIPPA-complaint form that was sent to him by the other defendants' attorney. Levey argued that he sent a letter to Sprute and the Association to confirm that they would accept the form provided by the other defendants' attorney, but they never responded.

After the trial court announced it was granting the motion to dismiss, the attorney for Sprute and the Association was given permission to proceed on the request for attorney's fees and court costs. An affidavit providing evidence of the reasonableness of the amount of attorney's fees and costs being requested was presented to the trial court. The total amount requested was $16,630.52. The attorney also stated that an additional $480 in attorney's fees had been incurred in preparing for and attending the hearing. Levey questioned the attorney about the absence of time records and noted the trial court's discretion in determining the amount to award. Levey requested the

trial court to "make a low award" "considering the totality of the situation." The attorney for Sprute and the Association challenged whether the trial court could lower the amount because the only limitations in section 74.351 are that the fees be reasonable and incurred. The trial court then stated, "With regard to the legal fees, I have a question with regard to the hourly rate and a question with regard to the breakdown of the services. So I'm going to reset you for a hearing where you can provide Mr. Levey with a breakdown of your fees, a detailed statement giving your hourly rate, and the contract that you have with your client." The written order signed by the trial court granted the motion to dismiss and stated, "The amount of the award will be reset for hearing when Defendants provide a breakdown of legal fees requested & hourly rate."

On November 8, 2013, Sprute and the Association filed a motion to determine attorney's fees and costs of court. On December 2, 2013, Sprute and the Association filed a motion to modify judgment, stating: (1) the parties appeared before the trial court for a hearing on November 22, 2013; (2) prior to that hearing, the attorney for Sprute and the Association provided Levey with an affidavit and documentation in support of their request for attorney's fees and costs; and (3) at the hearing, Levey stated he needed additional time to review the documentation. Because the trial court reset the November 22, 2013 hearing based on Levey's request for additional time, the motion filed by Sprute and the Association in December requested the trial court to set a date for the hearing.

On February 8, 2014, the trial court held a hearing on the motion to determine attorney's fees and the motion to modify. At that hearing, reference was made to a hearing held on December 31, 2013, at which Levey mentioned the possibility that he might want a jury trial on the amount of the attorney's fees to be awarded, so the hearing was postponed. At the February hearing, the trial court denied Levey's request for a jury trial and announced it was awarding $5,000 in attorney's fees plus court costs. In response to whether the trial court was taking the affidavits

regarding the reasonableness of the attorney's fees into consideration, the trial court responded that it took everything into consideration. Levey requested the trial court to "[n]ote our exception" to the affidavits because he had "issues with the sufficiency of the affidavit." The trial court acknowledged that the evidence presented included an affidavit and a supplemental affidavit requesting $31,653 in attorney's fees and $30.00 in costs.[2]

On February 18, 2014, the trial court signed an order: (1) incorporating its first order granting the motion to dismiss; and (2) awarding Sprute and the Association $5,030.00 in attorney's fees and court costs.[3] The order also severed the claims against Sprute and the Association from the claims against the other defendants. Levey filed a motion for new trial, and Sprute and the Association filed a motion to reconsider. Both motions were denied, and both parties appeal.

### DISMISSAL OF CLAIMS

In his third cross-issue, Levey contends the trial court erred in dismissing his claims "in view of the fact that there was evidence, which was uncontradicted that Sprute and [the Association] did not produce the medical records to which Levey was entitled and which would have formed the basis of the preparation of any expert report."[4] In summarizing his argument regarding this cross-issue, Levey contends his claims should not have been dismissed because the

---

[2] The affidavit presented at the February 2014 hearing was not the same affidavit presented at the hearing held in November of 2013. Detailed billing records with hourly rates were attached to the affidavit and supplemental affidavit presented at the February 2014 hearing.

[3] The award included $5,000.00 in attorney's fees and $30.00 in court costs.

[4] In the statement of facts section in his brief, Levey asserts that he alleged a conspiracy claim relating to Medicare fraud and also alleged "claims under federal law regarding the Unfair Claims Act." Levey then states, "These issues were never addressed by the Court and constitute independent causes of action." Levey does not, however, assert a separate issue challenging the trial court's determination that all of Levey's claims were health care liability claims. We hold Levey did not properly raise and brief the issue of whether some of his claims were not health care liability claims simply based on the foregoing two sentences in his statement of facts. *See* TEX. R. APP. P. 38.1(f),(i); *see also PM Mgmt.-Trinity NC, LLC v. Kumets*, 404 S.W.3d 550, 552 (Tex. 2013) ("When a plaintiff asserts a claim that is based on the same underlying facts as an HCLC [health care liability claim] that the plaintiff also asserts, both claims are HCLCs and must be dismissed if the plaintiff fails to produce a sufficient expert report.")

failure to produce the medical records "made the retention of an expert and the preparation of a report within the timeframe promulgated by the law impossible" and "asserts the doctrine of equitable estoppel."[5]

When the underlying lawsuit was filed, section 74.351 of the Code required the trial court to dismiss any health care liability claim asserted against a physician or health care provider who was not served with an expert report within 120 days after the date the original petition was filed. *See* Act of May 22, 2013, 83rd Leg., R.S., ch. 870, § 2, 2013 Tex. Gen. Laws 2217 (amended 2013) (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (West Supp. 2014)).[6] We apply an abuse of discretion standard in reviewing a trial court's dismissal under section 74.351(b). *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 877-78 (Tex. 2001). Under an abuse of discretion standard, we review a trial court's legal determinations de novo. *Stockton v. Offenbach*, 336 S.W.3d 610, 615 (Tex. 2011).

Levey does not dispute that he failed to timely serve Sprute and the Association with an expert report within 120 days after he filed his original petition. The law is clear that dismissal is mandatory if the expert report is not timely served. *See Garcia v. Gomez*, 319 S.W.3d 638, 640 (Tex. 2010) ("If no report is timely served, the trial court must, on motion, dismiss the claim."). Although Levey does not challenge this general law, Levey contends the deadline for serving the expert report should be extended in this case because Sprute and the Association did not produce the medical records necessary for the preparation of an expert report.

---

[5] In the argument section of his brief, Levey again refers to the application of the doctrine of equitable estoppel but also asserts, "The failure to take remedial action would result in the denial of due process of law guaranteed under the United States and Texas constitutions and would create a situation that is simply unfair and does not constitute equity." We again hold Levey did not properly brief a due process issue for our consideration. *See* TEX. R. APP. P. 38.1(f),(i). Moreover, Levey never raised a due process argument in the trial court; therefore, no due process issue was preserved for our review. *See Watts v. Watts*, 396 S.W.3d 19, 23 (Tex. App.—San Antonio 2012, no pet.) (noting argument on appeal must comport with argument at trial in order for argument to be preserved for appellate review).

[6] For lawsuits filed after September 1, 2013, the expert report must be filed within 120 days of the date each defendant's original answer is filed. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (West Supp. 2014).

"In repealing article 4590i and enacting Civil Practice and Remedies Code chapter 74, the legislature specifically removed the trial court's ability to grant an extension based on a plaintiff's diligence." *Estate of Regis v. Harris Cnty. Hosp. Dist.*, 208 S.W.3d 64, 68 (Tex. App.—Houston [14th Dist.] 2006, no pet.). Under section 74.351, the deadline for filing the expert report can be extended only by "written agreement of the affected parties." TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a). As a result, "[i]f a plaintiff wants an extension of time, it must either enter an explicit written extension agreement with the defendant or assume the risk of serving a deficient report and seeking an extension to cure the deficiency from the trial court." *Emeritus Corp. v. Highsmith*, 211 S.W.3d 231, 330 (Tex. App.—San Antonio 2006, pet. denied). "Absent an agreement of the parties, a trial court has no discretion to grant an extension and must dismiss a case in which a plaintiff fails to file a timely report." *Estate of Regis*, 208 S.W.3d at 68. Although this may lead to "seemingly harsh consequences," "[i]t is the province of the legislature — not this court — to provide for extensions or grace periods regarding this deadline." *Id.* (internal citations omitted) (overruling appellant's assertion that she was entitled to an equitable extension of time because she made good faith efforts to obtain the necessary records but the defendant did not provide them); *see also Otero v. Alonzo*, No. 13-10-00304-CV, 2011 WL 765673, at *3 (Tex. App.—Corpus Christi Mar. 3, 2011, no pet.) (mem. op.) ("a defendant health care provider's failure to provide medical records requested under section 74.051 does not toll the 120-day expert report deadline"); *Broxterman v. Carson*, 309 S.W.3d 154, 160 (Tex. App.—Dallas 2010, pet. denied) ("Although we understand Broxterman's frustration with attempting to obtain an expert report without her medical records, the statute does not provide for any extension based on diligent efforts."). Accordingly, the trial court had no discretion but to dismiss Levey's claims.

We note that the parties disagree on the reason the medical records were not provided. Levey insists that he provided the release form contained in chapter 74. *See* TEX. CIV. PRAC. &

REM. CODE ANN. § 74.052 (West Supp. 2014). Sprute and the Association, however, contend the form was not HIPPA-compliant because the form did not establish Levey's capacity or authority to act on behalf of his mother's estate. Regardless of which party is correct, Levey was aware of the issue with the release form as early as July 25, 2013, when the form was discussed at a hearing before the trial court. If Levey believed Sprute and the Association were abusing the discovery process by failing to produce the medical records, the hearing gave Levey a forum in which to seek assistance from the trial court; however, there is no indication in our record that he did so. *See Estate of Regis*, 208 S.W.3d at 68 (noting plaintiff waited one year to follow up after sending request that was not accompanied by proper authorization and never sought assistance from trial court). Although chapter 74 still would not allow the trial court to extend the discovery deadline based on a finding of discovery abuse, the Texas Supreme Court has stated that it "can imagine a case in which discovery sanctions might offset an award of fees and costs under section 74.351(b)." *Garcia*, 319 S.W.3d at 643. Because Levey did not seek the trial court's assistance or obtain a finding of discovery abuse, even the possible relief suggested by the Texas Supreme Court would not be appropriate in this case.

### ATTORNEY'S FEES

The sole issue presented by Sprute and the Association is that the trial court abused its discretion by awarding $5,000 in attorney's fees instead of the $31,653.00 requested. Sprute and the Association contend the trial court abused its discretion because they established by uncontroverted, sworn evidence that $31,653.00 in attorney's fees were "as a matter of law both reasonable and incurred."

Levey counters the "record is devoid of any evidence that the affidavit supporting the award of attorney's fees was actually introduced and admitted into evidence." Levey further contends the affidavits submitted by Sprute and the Association were "totally inadequate and did not comply

with Rule 902." Levey also asserts the amount of the award was within the trial court's discretion. Finally, Levey contends he was entitled to a jury trial to determine the reasonableness of the amount of attorney's fees to award.

Just as the law requires the trial court to dismiss the claims if an expert report is not timely served, the law also requires the trial court to award the defendant "reasonable attorney's fees and costs of court." TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b)(1); *Garza*, 319 S.W.3d at 640 ("section 74.351(b) mandates an award of attorney's fees and costs, when expert reports are not served timely"). "Ordinarily, the allowance of attorney's fees rests with the sound discretion of the trial court and will not be reversed without a showing of abuse of that discretion." *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 881 (Tex. 1990).

A.    Jury Demand

Levey contends the trial court erred in denying his request for a jury trial on the reasonableness of the attorney's fees to be awarded. In support of this contention, Levey cites this court's opinion in *Discover Prop. & Cas. Ins. Co. v. Tate*, 298 S.W.3d 249 (Tex. App.—San Antonio 2009, pet. denied).

In *Tate*, this court discussed the right to a jury trial under a statute that provided for the recovery of reasonable and necessary attorney's fees by a claimant who prevailed at trial. 298 S.W.3d at 252-57. When a case is dismissed under chapter 74, however, the attorney's fees are not awarded as "fees" but as "sanctions." *See Crites v. Collins*, 284 S.W.3d 839, 840 (Tex. 2009) (referring to recovery of attorney's fees under chapter 74 as sanctions); *Villafani v. Trejo*, 251 S.W.3d 466, 470 (Tex. 2008) (same). "By providing that the trial court assess the sanction, the plain language of the statute does not contemplate that a jury determine what is reasonable as attorney's fees." *Strom v. Memorial Hermann Hosp. Sys.*, 110 S.W.3d 216, 226-27 (Tex. App.—Houston [1st Dist.] 2003, pet. denied).

B.     Evidence

Levey next contends that he made objections to the affidavits presented by the attorney for Sprute and the Association. The record from the hearing establishes that the trial court acknowledged it had considered both affidavits, and the affidavits were included in the reporter's record as exhibits 1 and 2. Although Levey requested the trial court to "[n]ote our exception" to the affidavits because he had "issues with the sufficiency of the affidavit," Levey never made a formal objection or obtained a ruling thereon.

"To preserve error for appellate review, the complaining party must timely and specifically object to the evidence and obtain a ruling." *Bay Area Healthcare Group, Ltd. v. McShane*, 239 S.W.3d 231, 235 (Tex. 2007). "Error is waived if the complaining party allows the evidence to be introduced without objection." *Id.*

In this case, the trial court expressly stated that it considered the affidavits, and the affidavits are attached to the reporter's record as exhibits. Accordingly, the affidavits were evidence presented to the trial court to support the award of attorney's fees. Moreover, the record does not reflect that Levey made any formal objection to the affidavits or obtained a ruling thereon; therefore, any challenge he makes to the admissibility of the affidavits on appeal is waived. *See id.*

C.     Amount

With regard to proof of the reasonableness of attorney's fees, the Texas Supreme Court has instructed:

> An attorney's testimony about the reasonableness of his or her own fees is not like other expert witness testimony. Although rooted in the attorney's experience and expertise, it also consists of the attorney's personal knowledge about the underlying work and its particular value to the client. The testimony is similar to that of a property owner whose personal knowledge qualifies him to give an opinion about his own property's value. The attorney's testimony is not objectionable as merely conclusory because the opposing party, or that party's

attorney, likewise has some knowledge of the time and effort involved and if the matter is truly in dispute, may effectively question the attorney regarding the reasonableness of his fee.

*Garcia*, 319 S.W.3d at 641 (internal citations omitted). "'[W]here the testimony of an interested witness is not contradicted by any other witness, or attendant circumstances, and the same is clear, direct and positive, and free from contradiction, inaccuracies, and circumstances tending to cast suspicion thereon, it is taken as true, as a matter of law.'" *Id*. at 642 (quoting *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 882 (Tex. 1990)).

Applying the foregoing law, Sprute and the Association assert their attorney's affidavits were "clear, direct and positive" and were "free from contradiction, inaccuracies, and circumstances tending to cast suspicion" on them. Because Levey did not present any controverting evidence, Sprute and the Association contend they conclusively established the reasonableness of an award of $31,653.00 in attorney's fees; therefore, the trial court abused its discretion in awarding only $5,000.00. Sprute and the Association cite decisions from two of our sister courts in support of this contention. *See Hunsucker v. Fustok*, 238 S.W.3d 421, 432 (Tex. App.—Houston [1st Dist.] 2007, no pet.) ("Although the trial court had discretion to grant less than the requested amount upon an appropriate showing of reasonableness, we conclude that the trial court abused its discretion in awarding no attorney's fees for appeal in the face of uncontroverted evidence of the fees incurred and anticipated."); *Hoelscher v. Kilman*, No. 03-04-00440-CV, 2006 WL 358238 at *4 (Tex. App.—Austin Feb. 16, 2006, no pet.) ("Evidence of attorney's fees that is clear, direct, and uncontroverted is taken as true as a matter of law, especially where the opposing party had the means and opportunity of disproving the evidence but did not. In such instances, appellate courts will reverse a denial or minimization of attorney's fees and render judgment for attorney's fees in the amount proved.").

Although the opinions cited by Sprute and the Association provide support for their position, holding the trial court abused its discretion under the facts in this case appears contrary to statements made by the Texas Supreme Court in *Garcia* and in *Ragsdale*. First, in *Ragsdale*, the court stated, "we do not mean to imply that in every case when uncontradicted testimony is offered it mandates an award of the amount claimed." 801 S.W.2d at 882. For example, the court noted that in a default judgment situation, "the evidence may be uncontradicted, but the trial judge could find some of the claimed fees to be unreasonable, unwarranted, or some other circumstance which would make an award of the uncontroverted claim wrong." *Id*. Despite these statements, however, the court held the trial court abused its discretion in awarding only $150 in attorney's fees because the uncontroverted testimony of the attorney established $22,500 as the amount of reasonable attorney's fees that should have been awarded. *Id*.

Similarly, in *Garcia*, the court held that the attorney's testimony regarding fees was some evidence of a reasonable fee. 319 S.W.3d at 641. In reaching its holding, the court noted the other party did not cross-examine the witness, present any additional evidence on the issue of attorney's fees, or question the reasonableness of the amount of the fees. *Id*. Nevertheless, the court stated, "While we agree that Garcia's attorney's testimony is some evidence of a reasonable fee, it is not conclusive." [7] *Id*. at 642.

If we accept the argument made by Sprute and the Association in this appeal, we will be holding that their attorney's uncontroverted affidavits were conclusive. Although the issue in *Garcia* focused on whether the attorney's fees were incurred as opposed to whether they were

---

[7] In *Garcia*, the trial court dismissed the underlying lawsuit because no expert report was served but awarded no attorney's fees. 319 S.W.3d at 640. Holding the record contained some evidence that attorney's fees were both incurred and reasonable, the Texas Supreme Court reversed the appellate court's judgment affirming the trial court's failure to award any fees and remanded the attorney's fee claim to the trial court for further proceedings. *Id*. at 643.

reasonable, the Texas Supreme Court's statement that the attorney's uncontroverted testimony was not "conclusive" appears to preclude this court from holding that the attorney's uncontroverted testimony in this case removed all discretion from the trial court.

Although the trial court did not expressly state the reason it refused to award the full amount of attorney's fees requested, under the applicable standard of review, we must infer that the trial court found "some of the claimed fees to be unreasonable, unwarranted, or some other circumstances which [made] an award of the uncontroverted claim wrong," and the record in this case provides a basis for this court to make such an inference. *Ragsdale*, 801 S.W.2d at 882. For example, the trial court could have considered Sprute and the Association's failure to produce the medical records as a circumstance casting suspicion on the amount of attorney's fees requested. *Id.* (noting testimony must be free from "circumstances tending to cas[t] suspicion thereon"); *cf. Garcia*, 319 S.W.3d at 643 (imagining "case in which discovery sanctions might offset an award of fees and costs under section 74.351(b)"). In addition, the trial court expressly questioned the hourly rate and the breakdown of the services at the first hearing and reset the hearing after stating Sprute and the Association were required to present additional evidence. Finally, the trial court could also have questioned the increase in the amount of attorney's fees requested from $16,630.52 at the hearing at which the motion to dismiss was granted to $31,653 at the final hearing. Based on the foregoing, we hold the trial court did not abuse its discretion in limiting the amount of attorney's fees awarded.

## CONCLUSION

The trial court's orders are affirmed.

Sandee Bryan Marion, Chief Justice